## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT FOOS, ET AL.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Case No. 2:08-CV-0873** |
| | : | |
| **CITY OF DELAWARE, ET AL.,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **MAGISTRATE JUDGE KEMP** |
| **Defendants.** | : | |
| | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants the City of Delaware; the Delaware Police Department; Chief Russ Martin, in his official capacity; Police Officer Robert Hatcher**,** in his individual capacity; and Police Officer Patrick Gerke, in his individual capacity's (collectively, "Defendants") Motion for Summary Judgment . (Dkt. 25.).  Defendants filed for summary judgment on all of Plaintiffs Robert Foos, Marilyn Foos, and Robert Foos, Administrator for the Estate of Jeremy Foos' (collectively, "Plaintiffs") claims against them.  Those claims are Claims One through Six of Plaintiffs' Complaint.  (Dkt. 1.).  For the reasons stated below, Defendants Motion for Summary Judgment is **GRANTED**.

### II. BACKGROUND

On October 28, 2006, around 10 p.m., Jeremy Foos ("Foos") was involved in a single vehicle car accident at South Sandusky Street, Delaware, Ohio.  His car (a Ford150 truck with tinted windows) had run off the road and was stuck on a concrete pillar. Officer Hatcher was called to the scene of the accident, and when he arrived he observed Foos' truck smoking from

the back wheels.  This smoking occurred because Foos was applying pressure on the accelerator, but the truck appeared to be stuck on the concrete pillar.  Officer Hatcher parked his patrol car behind the truck, and put on his emergency lights.  Foos did not stop accelerating the car, and Officer Hatcher responded by turning on his siren and shining a spotlight in his mirror.  Foos continued to spin the tires of the car.  Officer Hatcher then approached the car from the side, and walked up to the driver's side door.  As Officer Hatcher approached, Foos continued to press on the accelerator.  When Officer Hatcher was closer, he saw that Foos was rocking back and fourth and flailing his arm in the car, and yelling words that Officer Hatcher could not understand. Officer Hatcher testified in his deposition that he interpreted this as Foos trying to dislodge the truck from the concrete block.  Officer Hatcher drew his weapon, and banged on the driver's window with his flashlight to get Foos attention. With his weapon pointed, Officer Hatcher then yelled at Foos to stop accelerating and turn off the truck.  Foos looked at Officer Hatcher, but continued his behavior.

At that point, Officer Hatcher backed away from the car and called for backup, including a medical unit and additional officer units.  The backup arrived approximately five minutes after the call.  Officer Hatcher testified that he called for the medic because he believed that Foos might need medical attention due to his unusual behavior, but did not know what was wrong with him.  Officer Gerke responded to Officer Hatcher's call for backup.  Officer Gerke also approached the vehicle and ordered Foos to turn off the car, but Foos continued to accelerate the car.  Officer Gerke testified in deposition that shooting out the tires to flatten them and stop the truck was not an option because the tires continued to spin and the truck was moving in its moored position.  The Officers checked the car doors and determined that they were locked.

Officers Hatcher and Gerke then decided to break out the car windows to access Foos and turn off the vehicle.  While they were discussing the situation, the Officers noticed that Foos had stopped accelerating the car, and was now between the driver's and passenger's seat reaching behind the seat.  The Officers both testified that they were unsure as to what Foos was reaching for, and could not rule out a weapon because they could not see into the vehicle due to the tinted windows.  Officers Gerke and Hatcher felt a need to respond quickly given Foos new behavior, and decided to break in the driver's side window, apply the taser to Foos, turn off the engine to the truck, and remove Foos from the vehicle.  When the window broke, Foos was back in the driver's seat, and began accelerating the car again, which caused the tires to begin smoking once again.  Foos was also jerking violently. At that point, Officer Hatcher deployed his taser.  The taser had no effect.  Officer Gerke then deployed his taser, and Foos yelled out "stop" and ceased to accelerate the car.

When Foos ceased accelerating, Officer Hatcher reached into the truck and turned the engine off.  Officer Gerke pulled Foos out of the truck.  As Foos was pulled out of the truck, the Officers observed that Foos was naked from the waist down.[1]  Officer Gerke, along with assistance from another officer, put Foos on the ground and handcuffed him with two handcuffs because he continued to shake and jerk.  The medic then transported Foos to Grady Memorial Hospital, where he was treated by Dr. Thomas Zuesi.  When Foos arrived at the hospital, he continued to struggle with his restraints (Reeves Sleeve), was acting abnormally, and his pupils were dilated.  Foos urine tested positive for cocaine and amphetamine. Dr. Zuesi testified in his

---

[1]Officers investigating the scene after Foos had been removed from the scene also found pornographic videos on a portable DVD player and an open jar of Vaseline on the floorboard.

deposition that although hyperagitation is common after cocaine of amphetamine usage, he had rarely seen a patient as agitated as Foos was. Foos suffered a seizure while being treated by Dr. Zuesi and stopped breathing shortly thereafter.  He was administered CPR and other drugs, and was connected to a pacemaker.  Foos was running a very high temperature, had a high acidity blood level, and was breathing with a ventilator.  Dr. Zuesi's medical report found that the precipitating event for the seizure and subsequent medical condition was the use of methamphetamine and cocaine.  In his deposition, Dr. Zuesi stated that after reviewing all of the lab work, he still holds the opinion that Foos drug use brought on his medical condition. Dr. Zuesi did not attribute Foos' medical condition to the use of the taser.

Foos was then transferred to Grant Hospital in Columbus, where he arrived at 2:00 a.m. on October 29, 2006.  Foos passed away at approximately noon on October 30, 2006.  An autopsy of Foos' body was conducted by Dr. William A. Cox.  The Coroner's Report finds that Foos' immediate cause of death was cardiovascular collapse as a consequence of acute cardiac arrhythmia as a consequence of cocaine and its metabolites.  (Defs. Ex. 4 at 56.)  In his affidavit, Dr. Cox states that during the autopsy he observed two possible puncture wounds on Foos' torso, consistent with a wound from a taser. (Defs. Ex. 4 at 2.)  Dr. Cox also states in his affidavit that the "taser which struck Mr. Foos were not a proximate cause of his death."  (Defs. Ex. 4 at 3.)

Chief Russ Martin is the Chief of Police for the City of Delaware, and testified in his deposition that he was responsible for policies on training and taser use.  Officers Hatcher and Gerke testified that they were trained in the use of tasers, and that their training did not include instructions on avoiding deployment of tasers on persons suspected of drug use or other medical conditions.  In his deposition, Officer Hatcher testified that he was given instruction not to use a

taser on vital areas (face and groin).  Officer Gerke testified that they were instructed not to use tasers on heads, and that he would not use a taser on a suspect who was having a seizure or whom he knew to have a heart condition, but that he would use a taser on someone he knew to be under the influence of drugs.

Plaintiffs filed this action on September 17, 2008, bringing six claims against Defendants. Claim One is a Section 1983 Wrongful Death Action; Claim Two is a Section 1993 Survival Action; Claim Three is a Section 1983 Deprivation of Familial Relationships; Claim Four is for Excessive Force and Deliberate Indifference to Serious Medial Needs pursuant to the United States and Ohio Constitutions; Claim Five is an action for Assault and Battery; and Claim Six is an action for Police Negligence.  This case has been fully briefed and argued; it is now ripe for decision.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant therefore has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  But the

non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW AND ANALYSIS

### A. Unnamed Defendants

In their Reply, Defendants raise that under Fed. R. Civ. P. 4(m), service must be made on all defendants within 120 days after the Complaint is filed. Fed. R. Civ. P. 4(m) provides that:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

At oral argument, Plaintiffs did not provide any good cause for the failure to serve the Does, and reported to the Court that the Does would likely not be named. Therefore, Plaintiffs are unable to show good cause, and this Court must **DISMISS** the action as to Does 1-10 and Claims Seven and Eight.

**B. Motion to Strike**[2]

Defendants' move to strike Exhibits 4, 5, 6, 7, and 9 as improper evidence under Fed. R.

Civ. P. 56(c) and (e) because these exhibits have not been authenticated by any deposition or

affidavit testimony.[3]

Not all types of evidence are permissible in an opposition to a motion for summary

judgment. *Steele v. Jennings*, No. 2:04-CV-189, 2005 WL 2124152, at *3 (S.D. Ohio, Aug. 31,

2005). The Sixth Circuit has held that "only admissible evidence may be considered by the trial

court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th

Cir. 1994). Authentication of a document is "a condition precedent to admissibility." *Steele*, 2005

WL 2124152, at *3; Fed. R. Evid. 901(a). This Court may consider evidence that is not

---

[2]In general, a district court should rule on a motion to strike before ruing on the related
motions for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 250 n.5
(2000) (stating the proposition that a district court should dispose of motions that affect the
record before ruling on pending motions for summary judgment).

[3]The Sixth Circuit has held in an unpublished case that motions to strike exhibits to
dispositive motions brought pursuant to Fed. R. Civ. P. 12(f) are not proper because exhibits do
not constitute a pleading within the meaning of Rule 12(f). *Fox v. Michigan State Police Dept.*,
173 Fed. Appx. 372, 374 (6th Cir. Feb. 24, 2006) (holding that a pleading is limited to those
documents specified in Fed. R. Civ. P. 7(a) "a complaint and an answer; a reply to a
counterclaim denominated as such; an answer to a cross-claim, if the answer contains a
cross-claim; a third-party complaint, if a person who was not an original party is summoned
under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.")
In this case, however, Defendants do not bring their motion to strike pursuant to Fed. R. Civ. P.
12(f); instead, Defendants allege that the exhibits should be struck pursuant to Fed. R. Civ. P.
56(c) and (e). While the Sixth Circuit has never affirmatively discussed whether Rule 56(e) can
provide a vehicle for a motion to strike, it "has affirmed the granting of a motion to strike made
under that rule." *Blackshear v. Interstate Brands Corp.*, No. 2010 WL 2045195, at *3 (S.D. Ohio
May 21, 2010) (citing to *Mohney v. USA Hockey, Inc.*, 5 F. App'x 450, 454 (6th Cir. 2001)); *see
also Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (noting that district courts
should strike only inadmissible portions of affidavits). Without further guidance from the Sixth
Circuit, this Court assumes that motions to strike pursuant to Rule 56(e) are permissible.

authenticated where the opposing party has not raised the issue of defect, as the burden is on the opposing party.  *Id.*  In the case *sub judice*, the Defendants have objected. (Defs. Reply. at 4.)

The exhibits Defendants ask this Court to strike are as follows. Exhibit 4 is a document that appears to be from Taser International which is titled "Volunteer Warnings, Liability Release and Covenant Not to Sue." Exhibit 5 appears to be an article titled "Taser-Induced Rapid Ventricular Myocardial Capture Demonstrated by Pacemaker Intracardiac Electrograms." Subscript to the article indicates that the manuscript was received on February 14, 2007.  Exhibit 6 appears to be an article published in "CMAJ, May 20, 2008" and is titled "Cardiac stimulation with high voltage discharge from stun guns." Exhibit 7 appears to be a letter to the Editor of "Annals of Emergency Medicine," in Volume 52, No. 1, July 2008 edition.  The letter is titled "Taser Safety Remains Unclear" and was written by Jared Strote, MD and H. Range Hutson, MD. Finally, Exhibit 9 appears to be an article published 2009 in "www.ACJonline.org" titled "Relation of Taser (Electrical Stun Gun) Deployment to Increase in In-Custody Sudden Deaths." Fed. R. Evid. 902(6) states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to...(6) Newspapers and periodicals. Printed materials purporting to be newspaper or periodicals." Fed. R. Evid. 902(6).  Exhibits 5, 6, 7, and 9 are all articles, and therefore are self-authenticating documents under Fed. R. Evid. 902.  *See Woolsey v. Nat'l Transp. Safety Bd.*, 993 F.2d 516, 520 (5th Cir. 1993). Exhibit 4 is not an article, and is not self-authenticating, nor have Plaintiffs provided any authentication for the document.

The motion to strike is, therefore, **GRANTED** as to Exhibit 4, and **DENIED** as to Exhibits 5, 6, 7, and 9.  This Court notes, however, that although Exhibits 5, 6, 7, and 9 are self authenticating, the Advisory Committee Notes to the Federal Rules of Evidence state that

"[e]stablishing the authenticity of the publication may, of course, leave still open questions of authority and responsibility for items therein contained."  Fed. R. Evid. 902 advisory committee note to Paragraph (6).  Plaintiffs have not provided affidavit or deposition testimony of which this Court is aware as to the authority or responsibility for the information contained within the articles in Exhibits 5, 6, 7, and 9.

### C. Claims for which Dismissal is Not Contested

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs state that they do not contest dismissal of Claim One (Wrongful Death) and Claim Five (Assault and Battery) as to all Defendants.  (Pls. Resp. at 34). Plaintiffs also do not contest the dismissal of Claim Six (Police Negligence) as to the City of Delaware and Chief Martin in his official capacity.  (Pls. Resp. at 34). Finally, Plaintiffs do not contest the dismissal of Defendant the City of Delaware Police Department, as it is a sub-unit of the Defendant the City of Delaware. (Pls. Resp. at 34). Accordingly, Claims One and Five are **DISMISSED** as to all Defendants, and Claim 6 is **DISMISSED** as to the City of Delaware and Chief Martin in his official capacity.

### D. Claim Two: Survival Action & Claim Four: Excessive Force and Deliberate Indifference to Serious Medical Needs

#### *1. Survivorship*

Under Ohio law, a claim for survivorship is a claim for the injuries (pain and suffering) that the decedent suffered while he was still alive.  *Mary Coal Co. v. Robinette*, 120 Ohio St. 110, 115-16 (1929).  In this case, it is a claim for the alleged injuries that Foos suffered as a result of the actions of Officers Hatcher and Gerke.  It is a "claim that is derivative of the principal claims in a complaint," and will remain "so long as any of the underlying principal claims in the

complaint remain." *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *9 (S.D. Ohio June 17, 2008). Thus, in order to determine if the Survivorship Claim survives summary judgment, this Court must first determine whether Plaintiffs' Excessive Force and Deliberate Indifference to Medical Needs Claim is appropriate for summary judgment. For the reasons stated below, Plaintiffs' Excessive Force and Deliberate Indifference to Serious Medical Needs Claim does not survive summary judgment. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' Claim Two: Survival Action is **GRANTED** because the underlying principal claims in the Complaint no longer remain.

## *II. Excessive Force as to Officers Hatcher and Gerke*

There is a constitutional right to be free from excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386 (1989). Claims for excessive force in the course of an arrest, stop, or seizure are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388. In assessing an excessive force claim, courts must construe all the facts in the record in the light most favorable to the plaintiff. *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010). After doing so, the question of whether Officer Hatcher and Officer Gerke's action were objectively unreasonable "is a pure question of law." *Id.* (citing to *Champion v. Outlook Nashville, Inc.*, 380 F.3d 89, 901 (6th Cir. 2004)). In order to determine whether the force used during an arrest or seizure was objectively reasonable, courts must balance "the nature and quality fo the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S.. at 396 (internal citations omitted). Courts must evaluate the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

-10-

others, and whether he is actively resisting arrest of attempting to evade arrest by flight." *Id.*  The reasonableness must be judged from the point of view of the officer on the scene at the time the force was used. *Id.*

As to the first factor, Defendants argue that at the time Officers Hatcher and Gerke used the taser on Foos, Foos had already committed several crimes, including being noncompliant with the Officers' directions, and continuing to accelerate on the car despite instructions to stop the vehicle.  Additionally, the officers knew that he had been in a car accident, and was behaving in an unusual manner by flailing around in the car and not responding to the officers.  Plaintiffs argue that Foos had not committed a crime, as all that had occurred was a one car accident that left Foos stuck on the concrete pillar.  Plaintiffs do not, however, contest that Foos failed to comply with Officer Hatcher and Gerke's instructions. In is undisputed that Foos did not comply with Officer Hatcher and Gerke's directions to stop the car, and in fact continued to accelerate the car to the point of having the tires smoke.  Certainly, Foos was engaged in more than "a mere traffic related offense." *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (finding that where a suspect evaded the police by refusing to stop his car for more than 2 minutes, "evading a police officer cannot be dismissed as a minor traffic violation.").  Although in this case Foos did not evade the police because his car was stuck on the pillar, he did continue to accelerate the vehicle, causing both Officer Hatcher and Gerke to have the legitimate concern that the car might dislodge, leave the scene, or hurt one of the responding officers or medics.  Even assuming that the seriousness of the crime was not a factor here, this Court must evaluate the other factors.

Turning to whether Foos posed an immediate threat to the safety of the officers, Defendants allege that they perceived Foos to be an immediate threat because of his erratic behavior and his continued acceleration of the car.  Additionally, Officer Hatcher and Officer Gerke both stated in their depositions that they were fearful that Foos may have had a weapon inside the truck as he rocked back and forth and reached behind him and around the truck. Plaintiffs contest that Foos posed an immediate threat, relying on testimony by Officer Hatcher that Foos did not make any motions threatening Officer Hatcher or the other officers.  Plaintiffs also state that spinning tires do not constitute a threat, that Foos was not reaching into the backseat of the truck at the exact moment he was tased, and that even if force had been justified, it was not justified at the time of the tasing.  Plaintiffs rely on *Landis v. Baker*, 297 Fed. Appx. 453 (6th Cir. 2008) for the proposition that although a suspect may pose a threat earlier in a police interaction, that earlier threat does not justify the use of force later in the interaction.

In evaluating Plaintiffs' contentions, although Officer Hatcher stated in deposition testimony that when he first approached Foos, Foos did not make any threatening gestures towards him or others, Officer Hatcher also stated that he was afraid that the car might dislodge and cause harm to someone, and Plaintiffs do not contest this statement.  Furthermore, Officer Hatcher's deposition testimony indicates that when Foos started to move around the car and reach behind the front seat, that Officer Hatcher and Officer Gerke acted in an expedient fashion because they did not know if Foos had weapons in the vehicle that he would use against the officers. (Pls. Resp., Ex. 2, at 52.)  Although Plaintiffs claim that spinning tired do not constitute a threat, Plaintiffs do not dispute that the car was smoking and when Officer Gerke broke in the window, Foos responded by accelerating the car.  Officer Gerke testified in his depositions that

they could not deflate the tires because it was too dangerous to approach the car while it was still in motion.  (Pls. Resp., Ex. 1, at 49-50.)  As Plaintiffs note in their Response, Officers Hatcher and Gerke considered the spinning tires to be a threat.  (Pls. Resp. at 19.)

While it is not clear from the record whether Foos was reaching behind him at the time he was tased, and therefore this Court assumes that he was not, it is undisputed that moments before he was tased, he was reaching behind the seat and that the officers were concerned that he might have a weapon.  It was this fear that led the officers quickly to break in the window and apply the taser to Foos. *See Dunn*, 549 F.3d at 354 (holding that where the suspect had evaded the officers, and "appeared recalcitrant in complying with the Officers' commands to exit his vehicle.  It would have been reasonable for the Officers to be apprehensive that Dunn may have a weapon in the car...or that the car may be used as a weapon.").

The facts in the case sub judice are also readily distinguishable from *Landis*.  In *Landis*, the suspect had originally tried to choke an officer, and then fled.  Officers found him standing in a pool of water, without any weapons, and unresponsive. 297 Fed. Appx. at 456.  The officers then applied multiple types of force to the suspect, including hitting with a baton 10 times, tasing him a total of five times, and leaving his face submerged in water for 10-15 seconds.  *Id.* 456-57.  Unlike *Landis*, Plaintiffs do not contest that Officers Hatcher and Gerke did not know if Foos had a weapon, knew that moments earlier he had been reaching behind the drivers seat of the car, that Foos was continuing to press the accelerator, and that he was not complying with orders.  Additionally, even though the hospital records show markings that support the use of taser once on Foos (supporting the evidence and testimony that although Officer Hatcher and Officer Gerke

-13-

both deployed their tasters, only Officer Gerke's attached), construing the facts in the light most favorable to the Plaintiffs, it is undisputed that Foos was tased no more than twice.[4]

Finally, as to whether Foos was actively resisting arrest or evading by flight, Defendants argue that Foos' continued efforts to accelerate and dislodge the truck constituted both a threat and an attempt to evade the officers. Plaintiffs contend, without offering any evidence, that it was physically impossible for Foos to flee in his truck because the truck was stuck. They do not dispute, however, that Foos continually accelerated and caused the tires to spin and smoke while he rocked back and forth. It is also undisputed that Foos was noncompliant with the repeated instructions to shut the truck off.

Taking all of these factors into account, the Officers' conduct cannot be found to be objectively unreasonable under the circumstances.[5] There is not "evidence on which the jury could reasonably find for the plaintiff." *Goodrich v. Everett*, 193 Fed. Appx. 551, 557 (6th Cir. 2006) (citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Because this Court

---

[4]Plaintiffs' further rely on *Landis* for the proposition that because Officer Gerke stated in his deposition that he believed Foos might be suffering from a mental condition, he should have used less force. In *Landis*, the Sixth Circuit stated that "the defendant officers' conduct must take into account the fact that at the time of the fatal struggle, the defendant officers had reason to believe that Keiser was either on drugs or mentally unstable *and* they knew that he was unarmed." 297 Fed. Appx. at 465 (emphasis added) (citing to cases which emphasize that different tactics should be employed against a suspect known to be unarmed and emotionally distraught). In this case, both Officers have testified that they believed Foos might have been harmed. Moreover, *Landis* was not decided until two years after the incident with Foos.

[5]Defendants also submit an affidavit from Michael Brave, an expert in law enforcement practices, which asserts that Officers Hatcher and Gerke acted appropriately and consistent with generally accepted law enforcement training and practices. Plaintiffs contest the use of this affidavit because Mr. Brave did not review the depositions prior to submitting his opinion. This Court is able to determine that the Officers' use of force was not objectively unreasonable without relying on Mr. Brave's affidavit, and therefore does not address Plaintiffs' objection.

concludes that there was no constitutional violation, it need not reach the issue of whether the Officers would be entitled to qualified immunity.

### III. Deliberate Indifference to Serious Medical Needs

The Supreme Court has long held that the "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citations omitted). Pretrial detainees and suspects are "analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). In order to determine whether officials acted with deliberate indifference, courts employ a test that includes both a subjective and objective component. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The subjective component requires that the officials have "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). This Court must determine whether there is a genuine issue of material fact as to whether the Defendants "were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and the Defendants ignored that risk." *Id.* (citing to *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)).The objective component requires "the existence of a sufficiently serious medical need." *Id.* A medical need is objectively serious if it is obvious such that it has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 896.

In this case, it is undisputed that Officer Hatcher called for assistance at the scene of the car accident, and that prior to his, and Officer Gerke's, use of the of taser, there was a medic unit called to the scene. It is also undisputed that after Foos was tased, he was removed from the

truck, handcuffed, and then placed in an ambulance and transferred to the hospital.  Plaintiffs

claim for deliberate indifference to a serious medical need appears to stem from the use of the

taser itself, not from a denial of medical care. Plaintiffs do not cite to, and this Court has been

unable to find, any case law in support of this proposition. Additionally, Defendants cite to

several cases in which a taser was used by officials but was not discussed in the court's analysis

of a deliberate indifference to serious medical need claim.  *See, e.g.*, *Edwards v. City of Martins

Ferry*, 554 F. Supp. 2d 797, 807 (S.D. Ohio 2008) ("Plaintiffs further argue that Officer Dojack

should have known that Mr. Edwards was suffering from a mental illness and thus should not

have tasered him. However, there is no evidence that Officer Dojack was aware of this. Further,

there is no caselaw to support any such heightened standard for suspects who suffer from some

mental impairment."); *Mann v. Taser Int'l, Inc*., 588 F.3 1291 (11th Cir. 2009) (Police called

EMS for medical consult because of suspects behavior, and used taser on suspect to gain control

of her after calling medics. Use of taser did not constitute excessive force, and in discussion of

deliberate indifference to serious medical need, court did not include discussion of use of taser).

Even construing all allegations in the light most favorable to the Plaintiffs, there is no

dispute that there was not a denial or delay in receipt of medical care.  Accordingly, neither the

subjective nor objective components of the test for deliberate indifference to a serious medical

need are met, and summary judgment is appropriate as to this claim.  Defendants motion for

summary judgment as to Plaintiffs' claim for deliberate indifference to a serious medical need is

**GRANTED**.

*IV. Municipal Liability*

Plaintiffs' Claim Four also includes a claim of municipal liability under § 1983 pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac County*, 606 F.3d 240, 254-55 (6th Cir. 2010) (internal citations omitted). In this case, Plaintiffs claim that their deprivation of constitutional rights stem from Chief of Police Martin's polices regarding training and the use of the taser weapon.  In order to succeed on a failure to train claim, the plaintiff must show that the failure to train amounts to deliberate indifference "to the rights of the person with whom the police come into contact." *Id.* at 255. To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* (citing to *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).

In the case sub judice, Plaintiffs claim for municipal liability fails because Plaintiffs were unable to establish a violation of Foos' constitutional rights.  *See Smith v. Thornburg*, 136 F.3d 1070, 1087, n.12 (6th Cir. 1998) (declining to address issue of municipal liability because no constitutional violation).  Even if Foos' constitutional rights had been violated, Plaintiffs' claim would fail because Plaintiffs have failed to show, or even allege, evidence of any prior instances of unconstitutional conduct such that the city was on notice prior to Officers Hatcher and Gerke's interaction with Foos.[6]

---

[6]Plaintiffs cite to *Johnson v. City of Cincinnati*, 39 F.3d 1013, 1020, to support their position that the County was on notice.  *Johnson*, however, dealt with the specific issue of prone restraint after seizures or extreme agitation, not the use of tasers.  Similarly, Plaintiffs rely on

Accordingly, Defendants' Motion for Summary Judgment as to municipal liability is

**GRANTED**.

### V. Violation of the Ohio Constitution

Finally, Plaintiffs allege in Claim Four that Defendants violated Foos' right to be free

from excessive force under Article I, Section 14 of the Ohio Constitution. This section of the

Ohio Constitution mirrors the Fourth Amendment to the United States Constitution:

> The right of the people to be secure in their persons, house, papers, and
> possessions, against unreasonable searches and seizures shall not be violated; and
> no warrant shall issue, but upon probable cause, supported by oath or affirmation,
> particularly describing the place to be searched and the person and thing to be
> seized.

O.H. CONST. art. 1, § 14.

Defendants rely on *Provens v. Stark Cty. Bd. Of Mental Retardation*, 64 Ohio St. 3d 252

(1992) to support their assertion that there is no private right of action under Ohio law for a

violation of Article I, Section 14 of the Ohio Constitution. In *Provens*, the Ohio Supreme Court

held that public employees do not have a private right of action against an employer for alleged

violation of the Ohio Constitution. The Supreme Court explained that:

> [T]here [is] no private constitutional remedy for the plaintiff-appellant's claims in
> that the Ohio Constitution itself does not provide for a civil damage remedy.
> Further, in that there are rather extensive legislative and regulatory schemes
> providing for the bringing of complaints and charges emanating from civil rights
> violation...

*Id.* at 261.

---

*Landis v. Baker* for the proposition that the County was on notice that persons with suspected
mental illness should be treated differently with respect to use of force. This argument fails
because *Landis v. Baker* was decided two years after Foos death. 297 Fed. Appx. 453, 465 (6th
Cir. 2008).

Plaintiffs maintain that *Provens* should be limited to the holding that public employees do not

have a private cause of civil action against their employer for alleged violations of the Ohio

Constitution.[7] *Provens*, however, has been relied upon by several courts, including the Sixth

Circuit, the Northern District of Ohio, and this Court, to extend to other Constitutional provisions,

including Article I, Section 14. *See Sovacool v. General Tire, Inc.*, 108 F.3d 1377, 1377 (6th Cir.

1997) (citing to *Provens* to support holding that claim that defendant violated public policy by

discharging plaintiffs based on age was properly dismissed as there were other adequate

remedies); *Kies, ex rel. Kies v. City of Lima, Ohio*, No. 3:07CV1258, 2007 WL 4287629, at *2-3

(N.D. Ohio Dec. 4, 2007) ("Applying the *Provens* framework to this case, § 14 does not itself

provide for a private cause of action."); *Wesaw v. City of Lancaster*, No. 22005CV0320, 2005

WL 3448034, at *4-5 (S.D. Ohio Dec. 15, 2005) (holding that there is not a private cause of

action for civil torts arising under the search and seizure provision of the Ohio Constitution

(Article 1, Section 14), because "violations of rights secured under the Ohio Constitution do not,

in and of themselves, confer a private right of damages and because a full remedy [under the

United States Constitution and pursuant to Section 1983] is available to Plaintiffs without

invoking the protections of the state constitution..."). In *Burr v. Burns*, No. C2-04-1118, 2005

WL 1969532, at *10 (S.D. Ohio, Aug. 12, 2005), the court held that the plaintiff did not have a

---

[7]Plaintiffs also cite to *Alley v. Bettencourt*, 134 Ohio App. 3d 303 (Ohio App. 4 Dist., Sept. 10, 1999) to support their argument that there is a private right of action under the Ohio Constitution. While the court in *Alley* states that the Ohio Constitution (along with the Fourth and Fourteenth Amendments to the United States Constitution) protects the right of the people to be free from unreasonable searches and seizures, the court conducted the analysis of excessive force pursuant to the Fourth Amendment to the United State Constitution under Section 1983, and did not address whether a private right of action would exist for a constitutional tort brought under the Ohio Constitution alone. *Id.* at 312.

claim under Article 1, Section 14 of the Ohio Constitution because Section 1983 "provides a full panoply of remedies for a search and seizure claim under the United States Constitution," and because violations of rights granted by the Ohio Constitution "do not, in an of themselves, confer a private right of damages."

Guided by the decision in *Provens*, and the subsequent cases interpreting *Provens*, particularly as it applies to Article 1, Section 14 of the Ohio Constitution, this Court holds that Plaintiffs do not have a private right of action because a full remedy is available to Plaintiffs under Section 1983 and the United States Constitution for excessive force claims and because there is no private right of damages conferred by the search and seizure provision of the Ohio Constitution. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Article 1, Section 14 claim under the Ohio Constitution.

### E. Claims Three: Deprivation of Familial Relationships

Defendants move for summary judgment on Plaintiffs' third claim for deprivation of familial relationships. Plaintiffs' claim states that "...plaintiffs sustained general damages, including grief, emotional distress and pain and suffering and loss of comfort and society, and special damages, including loss of support..." (Compl. at 34.) In their Response, Plaintiffs concede that under *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984), claims that inure solely to Foos' heirs and not to Foos personally can not survive. (Compl. at 16.) In *Jaco*, the Sixth Circuit held that "the wrongful death of the decedent resulting from a tort, which gives rise to the cause of action for the benefit of his heirs, is not equivalent to decedent's personal § 1983 claim, and decedent's administratrix is therefore without standing in the federal forum to commence an action..." 739 F.2d at 242-43. This Court has previously noted that although other circuits allow §

1983 actions by family members of the individual whose constitutional rights were violated *Jaco* continues to be good law in the Sixth Circuit. *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 824-25 (S.D. Ohio 2002).  Accordingly, Plaintiffs' claim for the deprivation of familial relationships suffered by the Plaintiffs themselves are claims that inure solely Foos' heirs, and is not a proper § 1983 claim under the law of the Sixth Circuit.  Defendants' Motion for Summary Judgment as to Plaintiffs' Third Claim for Relief (Deprivation of the Rights of Plaintiffs to Familial Relationships with the Decedent) is, therefore, **GRANTED**. The claim is dismissed.

### F. Claim Six: Police Negligence

In Claim Six, Plaintiffs allege that Defendant Officers Hatcher and Gerke[8] were negligent in their failure to exercise due care in dealing with Foos.  (Compl. at ¶ 41.)  Under the Ohio Revised Code, Chapter 2744, the employee of a political subdivision is immune if sued for tortious conduct as an individual, unless:

> (a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
> (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code.

R.C. 2744(A)(6)

In this case, Plaintiffs allege that Officers Hatcher and Gerke were reckless. (Pls. Resp. at 34.) Under Ohio law, the term "reckless" is used interchangeably with "willful" and "wanton." *Thompson v. McNeill*, 53 Ohio St. 3d 102, 104 (1990).  The Ohio Supreme Court has defined wanton misconduct where there is a failure to "exercise any care whatsoever toward those to

---

[8]As noted above, Plaintiffs do not contest the dismissal of the City of Delaware and Chief Martin from this Claim. *See supra* Section IV(B).

whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result..." *Hawkins v. Ivy*, 50 Ohio St.3d 114, 117-18 (1977). "[M]ere negligence is not converted into wanton misconduct unless the evidence established a disposition to perversity on the part of the tortfeasor.  Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St. 3d 351, 356 (1994).

"[T]he issue of wanton misconduct is normally a jury question."  *Id.*  Ohio courts have, however, granted summary judgment on the issue of wanton misconduct where "the record is devoid of evidence tending to show that the political subdivision employee acted wantonly or recklessly."  *Irving v. Austin*, 138 Ohio App. 3d 552, 556 (Ohio App. 6 Dist., Aug. 4, 2000); *see also Fabrey*, 70 Ohio St. 3d at 356 (finding that lower court correctly granted summary judgment were no evidence of wanton conduct).

In the case sub judice, the record is devoid of evidence or allegations that Officer Hatcher or Officer Gerke's actions were wanton or reckless. Neither the Complaint nor the depositions allege or show that the Officers failed to exercise any care whatsoever or establish a disposition to perversity.  While Plaintiffs have provided evidence in their Exhibits that the use of taser on a person under the influence of drugs could be harmful, even if it could be shown that Officers Hatcher and Gerke know of the articles and evidence, those articles were not published until well after their tasing of Foos.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' Sixth Claim for Relief: Police Negligence is **GRANTED**.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED** as to Claims One through Six.  Defendants the City of Delaware, the Delaware Police Department, Chief Russ Martin, Officer Robert Hatcher, and Officer Patrick Gerke are **DISMISSED**.  Pursuant to Fed. R. Civ. P. 4(m), Defendants Does 1 through 10 and Claims Seven and Eight are **DISMISSED**.  This case is **DISMISSED**.

**IT IS SO ORDERED.**

   **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 31, 2010**